IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

KORNELIUS DANIELS,                 :
                                   :
    Plaintiff,                     :
                                   :
vs.                                :
                                   :    CIVIL ACTION 16-0245-M
CAROLYN W. COLVIN,                 :
Social Security Commissioner,      :
                                   :
    Defendant.                     :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling denying a claim for Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 14).  The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order judgment in accordance with 28 U.S.C. § 636(c), Fed.R.Civ.P. 73, and S.D.Ala. Gen.L.R. 73(b) (*see* Doc. 20).  Oral argument was waived in this action (Doc. 19).  After considering the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED.**

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th

1

Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Daniels was twenty-eight years old, had completed two years of vocational education at a community college (Tr. 78), and had previous work experience as a janitor, retail salesclerk, and cashier/stocker/storekeeper (Tr. 78, 89).  Plaintiff alleges disability due to Multiple Sclerosis (hereinafter *MS*), neuropathy, hypertension, obesity, and cognitive loss (Doc. 13).

The Plaintiff applied for SSI on March 4, 2013, asserting a disability onset date of the same date (*see* Tr. 19; 128-33).  An Administrative Law Judge (ALJ) denied benefits, determining that although Daniels could not return to his past relevant work, there were specific sedentary jobs that he could perform (Tr. 19-32).  Plaintiff requested review of the hearing decision (Tr. 7-8), but the Appeals Council denied it (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Daniels alleges the single claim that the ALJ erred in rejecting the

2

opinion of the examining Neuropsychologist (Doc. 14).  Defendant has responded to—and denies—this claim (Doc. 15).  The Court's summary of the relevant evidence follows.

On November 30, 2012, Daniels was seen by a CRNP at Health Services, Inc. for lower back pain with radiation into both legs, causing numbness, aggravated by movement and cold for two weeks (Tr. 191-95).  Plaintiff's Body Mass Index (hereinafter *BMI*) was 38, his blood pressure 140/100, and he rated his pain as zero on a ten-point scale.  Daniels had full range of motion (hereinafter *ROM*) in his lower back and both legs without limitation.  On January 7, 2013, Plaintiff complained of a sudden onset of numbness and tingling in both hips down to his feet; pain was rated at four (Tr. 196-200).  Normal ROM, muscle strength, and stability in all extremities with no pain were noted; Daniels was oriented in four spheres and exhibited appropriate mood and affect.  He was ordered to exercise four times weekly and stay on a low-salt diet; amitriptyline[1] was prescribed.  On March 14, Plaintiff had a normal examination though he was characterized as morbidly obese with a BMI of 40; Tramadol[2] was prescribed (Tr. 207-11).

On April 14, 2013, Dr. Stephen J. Robidoux examined Daniels

---

[1] **Error! Main Document Only.***Amitriptyline*, marketed as *Elavil*, is used to treat the symptoms of depression.  *Physician's Desk Reference* 3163 (52nd ed. 1998).

[2] *Tramadol* "is indicated for the management of moderate to moderately severe chronic pain in adults who require around-the-clock treatment of their pain for an extended period of time."  **Error! Main Document Only.***Physician's Desk Reference* 2520 (66th ed. 2012).

who complained of an inability to feel his feet; he reported the ability to "cook, clean, do laundry and shop" as well as drive a car (Tr. 221; see generally Tr. 220-23).  The Doctor noted that Plaintiff was oriented in all spheres, could squat and raise, and that he had normal heel and toe walking and tandem gait. ROM measurements were all normal; an MRI of his back was normal. Dr. Robidoux noted there were no limitations in Daniels's ability to sit, stand, bend, squat, lift, walk, run, carry, kneel, crawl, handle objects, use hand and foot controls, talk, listen, and travel but indicated that he would benefit from a structured exercise and diet program.

On June 3, 2013, Dr. Khurram Bashir, at the UAB MS Clinic, examined Daniels, noting that he had examined him more than six years earlier for MS-related problems though Plaintiff never started disease-modifying therapy (Tr. 230-32; *see also* Tr. 235-44).  Plaintiff rated his pain at seven.  The Doctor noted that a recent brain MRI, when compared to one from 2007, showed worsening demyelinating disease, with new right temporal, and several left parietal, lobe deep white matter lesions, suggesting MS.  Bashir found full motor strength throughout and normal independent gait and coordination.  The Doctor's impression was that Daniels had relapsing remitting MS and acute MS relapse, presenting as partial cervical transverse myelitis, mild to moderate in severity, affecting his gait.  Appropriate

medications were prescribed and a regular exercise regimen was encouraged.

On June 18, 2013, Daniels went to Whatley Health Services to find a Preferred Care Provider (hereinafter *PCP*); Plaintiff stated that his medications had helped with the numbness and tingling from his waist down though he was still experiencing pain at a level three (Tr. 246-48).  Daniels had normal ROM, muscle strength and stability in all extremities with no pain on inspection; he was oriented in four spheres and demonstrated appropriate mood and affect.  On July 12, Dr. Gary M. Walton examined Plaintiff for complaints including fatigue, pain, weight gain, and weight loss; no specific pain claims were made (Tr. 249-52).  On October 7, Daniels complained of joint pain, at a level nine beginning two weeks earlier, causing decreased mobility, difficulty with sleep, limping, spasms, and swelling; Plaintiff rated his pain at two on that day (Tr. 253-57).  Following a normal exam, Dr. Walton encouraged Plaintiff to exercise at least three times per week as well as dietary modification; the diagnosis was malignant hypertension and MS.  On November 8, Daniels voiced no complaints, but noted some weight loss; the exam was unremarkable (Tr. 258-60).  On February 12, 2014, Plaintiff complained of insomnia, difficulty concentrating, increased fatigue, irritability, personality changes, and finger numbness (Tr. 266-69).  Dr. Walton

5

encouraged exercise and weight reduction.

On October 7, 2014, John R. Goff, Neuropsychologist, examined Daniels; in his report, he first reviewed the other evidence of record provided to him (Tr. 276-84).  Goff noted that Plaintiff's discourse was logical and coherent, though, at times, it was consistent with patients who have MS; Daniels reported a good appetite, but difficulty sleeping.  Affect was normal, though Plaintiff reported being depressed; he was anxious and apprehensive.  Daniels took the Wechsler Adult Intelligence Scale (WAIS-IV) and scored a full scale IQ of 96, placing him within the average range of psychometric intelligence; the processing score fell within the borderline range and the working memory index was a low average score.  The Neuropsychologist noted that Plaintiff slowed down when motor movement was required and that he had difficulties with immediate memory.  On the Reitan-Indiana Aphasia Screening Test and clock-drawing tasks, Daniels produced adequate drawings, readable handwriting, and that he could read at the fourth-grade level and perform simple mathematical calculations.  Goff stated the following about Plaintiff's Trail Making Test results:

> The Trail Making Test is a simple test of visual motor problem solving skill sometimes helpful in the identification of organic brain dysfunction.  He obtained scores within the impaired range on both aspects of the test.  It took him 52 seconds to complete Trails A which merely requires

6

> the subject to connect sequenced numbered circles. It took him 97 seconds to complete Trails B which requires the alternation of numbers and letters. The cutoff scores for identification of identification of organic brain dysfunction are 45 and 97 seconds respectively and both those scores are, therefore, above the threshold.

(Tr. 280). On the Wechsler Memory Scale (WMS-III) and the Central Nervous System Vital Signs protocol (CNS-VS), Daniels was able to provide personal and current information and was oriented in all spheres; he had low average scores—"lower than we would expect on the basis of his intellectual level"—on immediate memory, delayed memory, and total memory scales (Tr. 280). Goff noted that the tests demonstrated poor verbal recall. Grip strength was weak bilaterally and only little more than half of what was expected; right hand dexterity was pathologically slow. The Examiner indicated that the deficits in verbal memory skills and strength and dexterity were "quite likely related to his central nervous system disease process" (Tr. 280). The Personality Assessment Inventory (PAI) suggested "an unusual degree of concern about physical functioning and health matters and probable impairment arising from somatic symptoms" relating to MS (Tr. 281); the Neuropsychologist noted that Daniels's concern was not unwarranted. The Examiner found no indications of malingering or dissimulation; test results were thought to be valid. Goff's diagnosis was Adjustment

7

Disorder with Depressed Mood and Somatic Concern Cognitive Disorder (Loss) associated with Demyelinating Disease; his concluding remarks were as follows:

> During this examination he was able to understand, follow and carry out simple instruction and some complex instructions. He just has a tendency to work very slowly I think because of the combination of depression associated with psychomotor slowing and some coordination problems associated with the MS.  He also has problems remembering complex verbal kinds of instructions.  He is preoccupied with his health and has difficulty with the stresses and pressures of the workplace.  He says that he cannot stand for very long.

(Tr. 282).   Goff also completed a Mental Medical Source Opinion Form in which he indicated that Daniels had marked limitations in his ability to understand and remember detailed or complex instructions and respond to customary work pressures; he was extremely limited in his ability to maintain attention, concentration or pace for a period of at least two hours (Tr. 283-84).  Daniels was moderately limited in his ability to carry out and remember simple instructions, carry out detailed or complex instructions, and deal with changes in a routine work setting.  Goff thought that Plaintiff had marked constriction of interests, that these limitations had lasted for more than a year, and that his pain was consistent with clinical findings.

This concludes the Court's summary of the record evidence.

In bringing this action, Daniels asserts that the ALJ erred in rejecting the opinion of the examining Neuropsychologist Goff (Doc. 14, pp. 5-7). Plaintiff specifically claims that the ALJ misinterpreted the results from the Trail Making Test. Daniels took 52 seconds to complete Trails A and 97 seconds to complete Trails B (Tr. 280). In his report, the Neuropsychologist stated that "[t]he cutoff scores for identification of organic brain dysfunction are 45 and 97 seconds respectively and both those scores are, therefore, above the threshold" (Tr. 280).

The ALJ, in summarizing the evidence, stated that "even though the claimant obtained scores within the impaired range on both aspects of the Trail Making Test, his scores remained above the threshold for identification of organic brain dysfunction" (Tr. 22). The ALJ went on to state "Dr. Goff's own testing produced results inconsistent with organic brain dysfunction" (Tr. 23).

Respondent argues that even though his word choice was "clumsy" (Doc. 15, p. 6 n.2), the ALJ was, nevertheless, correct in his assessment. The Court reads the Government's brief to argue that the Trail Making Test did not indicate organic brain dysfunction.

The Court agrees with Respondent that the ALJ's conclusion on this issue was not written as well as it might have been. The Court disagrees with the ALJ's conclusion, however.

9

The Court reads Goff's statement regarding the Trail Making Test results to indicate that Daniels suffers some degree of organic brain dysfunction.  The Neuropsychologist did not, however, discuss the degree of dysfunction suffered as measured by that particular test.  He did, however, administer a battery of tests, report the test results, provide a diagnosis based on those results, and then indicate, in a Mental Medical Source Opinion Form, the degree of limitation he thought Plaintiff would experience in performing work-related activities.

The ALJ rejected those limitations:

> Given the claimant's relatively recent diagnosis with MS and the lifestyle changes associated (and anticipated) with such a diagnosis, the impression of an adjustment disorder with depression is reasonable; however, the evidence of record fails to support Dr. Goff's opinions regarding the severity of limitation associated with that impairment.  The evidence of record also fails to establish a medically determinable cognitive (loss) disorder.  Treatment records reflect only rare, isolated complaints of depression and memory deficits. . . .  In addition, findings by other examiners—including the claimant's MS specialist—are inconsistent with the severity of impairment offered by Dr. Goff.

(Tr. 23).[3]  More specifically, the ALJ rejected Goff's findings, as set out as follows:

---

[3] The omitted section concerns the ALJ's finding that "Dr. Goff's own testing produced results inconsistent with organic brain dysfunction" (Tr. 23).  The Court rejects this conclusion as it pertains to the Trail Making Test, but, as will be discussed, not as to the balance of the evidence provided by Dr. Goff.

10

As for the opinion evidence, little weight is accorded Dr. Goff's opinions as reflected in his report of evaluation and accompanying mental medical source (MSS) opinion form given their inconsistency internally and with the other evidence of record (Exhibit 9F).  Dr. Goff's mental status examination (MSE) and test results provide no basis for his opinion that the claimant has a marked degree of limitation in his ability to respond to customary work pressures.  The claimant stopped working long before he was diagnosed with MS and before the condition became symptomatic.  Contrary to this report to Dr. Goff, he also admits that he stopped working for reasons unrelated to his health.  Dr. Goff's opinion that the claimant has an extreme degree of limitation in his ability to maintain attention, concentration, or pace for periods of at least two hours is equally unsupported.  Although the claimant reportedly endorsed some distractibility and difficulty concentrating "in regard to his thought processes" when completed Dr. Goff's personality assessment, he demonstrated adequate concentration skills during the MSE with no evidence of waning concentration or persistence over the course of the lengthy neuropsychological evaluation.  The claimant's high borderline (79) WAIS IV processing speed index and borderline (75) CNS-VS processing speed fall well short of an "extreme" limitation as does Dr. Goff's characterization of the claimant in the body of his report as only "a bit" slowed down during motor movements.  In the MSS he completed, Dr. Goff opines that the claimant has moderate limitations in his ability to remember and carry out even simple instructions.  He also opines that the claimant has marked limitations in his ability to understand and remember detailed or complex instructions but only moderate limitations in his ability to carry out such instructions.  In his report, Dr. Goff noted that the claimant had problems remembering

> "complex verbal kinds of instructions" but
> provided no specific supporting evidence and
> cited no limitations at all in terms of his
> ability to remember simple instructions. He
> also noted that the claimant was able to
> understand, follow, and carry out simple
> instructions as well as "some" complex
> instructions.

(Tr. 30). The Court finds substantial support for these conclusions, while noting that Daniels has not challenged them (*see* Doc. 14, pp. 5-7). The Court further notes that the only support for Goff's limitations comes through Plaintiff's own testimony and statements made to his physicians. However, the ALJ rejected Daniels as a credible witness, a finding unchallenged in this action (*see* Tr. 26, 29-30).

In summary, the Court finds that Daniels is correct in arguing that the ALJ misinterpreted Goff's characterization of the Trail Making Test. However, the Court finds that the error is harmless in that his overall assessment of Goff's conclusions is supported by substantial evidence. Though the Trail Making Test appears to demonstrate organic brain dysfunction, the balance of the evidence from that examination does not demonstrate the limitations suggested by the Neuropsychologist. The undersigned finds the ALJ's conclusions supported by the substantial evidence of record.

Plaintiff has raised a single claim in bringing this action. That claim is without merit. Upon consideration of the

entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 5th day of December, 2016.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE